**DEATH PENALTY CASE**
IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

**CASE NO. 12-15132-P**
_____

WILLIAM EMMETT LECROY, JR.,
Appellant/Petitioner,

v.

UNITED STATES OF AMERICA,
Appellee/Respondent.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, GAINESVILLE DIVISION

_____

**PETITION FOR REHEARING EN BANC**
_____

JOHN R. MARTIN
Martin Brothers, P.C.
Georgia Bar No.  473325
202 The Grant Building
44 Broad Street N.W.
Atlanta, GA 30303
(404) 522-0400
jack@martinbroslaw.com

SANDRA MICHAELS
Martin Brothers, P.C.
Georgia Bar No.  504014
202 The Grant Building
44 Broad Street N.W.
Atlanta, GA 30303
(404) 522-0400
slmichaels@mindspring.com
**Attorneys for Appellant**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

WILLIAM EMMETT LECROY, JR.,          *
                                     *
    **Appellant/Petitioner,**            *
                                     *
v.                                   *          **Case No. 12-15132-P**
                                     *
UNITED STATES OF AMERICA             *
                                     *
    **Appellee/Respondent.**            *

## CERTIFICATE OF INTERESTED PERSONS

The Appellant certifies that the following persons have an interest in the outcome of the instant appeal:

William Emmett LeCroy, Jr. – Appellant

John R. Martin – Appellant's counsel

William McKinnon – Appellee's counsel

Sandra Michaels – Appellant's counsel

Richard W. Story – District Court Judge

Joann Tiesler – Victim

ii

## CERTIFICATION OF TYPE SIZE AND STYLE

Pursuant to Eleventh Circuit Rule 28-2(d), Appellant certifies that this Brief is typed in 14 point Times New Roman.

## STATEMENT REGARDING BASIS FOR EN BANC CONSIDERATION

We express a belief based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exception importance:

1)   In a death penalty case can a decision not to present compelling expert evidence connecting the crime to mental illness be reasonable performance by counsel when the decision is made to forego this evidence because of fear of a Government evaluation but without knowledge of what an independent Government evaluation would have shown?

2)   Whether a Defendant in a 28 U.S.C. § 2255 action challenging a federal death penalty sentence has failed to show the prejudice from abandoning a mental health defense based upon the fear of a Government evaluation when he has not shown what a Government evaluation would have shown, something over which the Defendant had no control because he could not force the Government to conduct such an independent evaluation?

s/John R. Martin
John R. Martin
MARTIN BROTHERS, P.C.
202 The Grant Building
44 Broad St., N.W.
Atlanta, GA  30303
(404) 522-0400

iii

jack@martinbroslaw.com

s/Sandra Michaels
Sandra Michaels
202 The Grant Building
44 Broad St., N.W.
Atlanta, GA  30303
(404) 522-0400
slmichaels@mindspring.com

**ATTORNEYS FOR
APPELLANT LECROY**

iv

# **TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ................................................. ii

CERTIFICATE OF TYPE SIZE AND STYLE ................................................. iii

STATEMENT REGARDING BASIS FOR EN BANC CONSIDERATION............ iv

TABLE OF CONTENTS .................................................................... v

TABLE OF CITATIONS .................................................................... vi

STATEMENT OF THE ISSUES ASSERTED TO MERIT EN BANC
CONSIDERATION.......................................................................... 1

STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION
OF THE CASE…………………………..................................................... 2

STATEMENT OF FACTS NECESSARY FOR ARGUMENTS OF THE
ISSUES……………………………………………………………………… 3

ARGUMENT AND AUTHORITIES.................................................... 7

CONCLUSION............................................................................. 13

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

**CASES**                                                  **PAGE**

Baxter v. Thomas, 45 F.3d 1501 (1995)…………………………………………..7

Bond v. Beard, 539 F.3d 256 (3rd. Cir. 2008)………………………………………..10

California v. Brown, 479 U.S. 538 (1987)…………………………………………...9

Horton v. Zant, 941 F.2d 1449 (11th Cir. 1991)…………………………………..8

Jackson v. Herring, 42 F.3d 1368 (11th Cir. 1995)………………………………..10

Johnson v. United States, 860 F.Supp.2d 663 (N.D.Iowa 2012)…………………10

LeCroy v. United States, ___ F.3d ___, 2014 WL 129022, C.A.11 (Ga. 2014)….2

Sears v. Upton, __ U.S. __, 130 S.Ct. 3259 (2010)…………………………….9

Strickland v. Washington, 466 U.S. 668 (1984)……………………………………7, 11

United States v. LeCroy, 441 F.3d 914 (11th Cir. 2006)………………………2, 3

United States v. LeCroy, 550 U.S. 905 (2007)…………………………………2

United States v. LeCroy, 2012 WL 1114238 (N.D.GA. May 30, 2012)………….2

United States v. O'Reilly, 2010 WL 653188*5 (E.D. Mich.)…………………….10

**STATUTES**

18 U.S.C. §3593(e)…………………………………………………………..9

28 U.S.C. § 2255……………………………………………………………..iii, 1

**OTHER**

**Eleventh Circuit Rules:**

28-2(d)……………………………………………………………………….ii

**Federal Rules of Criminal Procedure:**

12.2(c)……………………………………………………………6, 10, 11, 12

## STATEMENT OF THE ISSUES ASSERTED
## TO MERIT EN BANC CONSIDERATION

1) In a death penalty case can a decision not to present compelling expert evidence connecting the crime to mental illness be reasonable performance by counsel when the decision is made to forego this evidence because of fear of a Government evaluation but without knowledge of what an independent Government evaluation would have shown?

2) Whether a Defendant in a 28 U.S.C. § 2255 action challenging a federal death penalty sentence has failed to show the prejudice from abandoning a mental health defense based upon the fear of a Government evaluation when he has not shown what a Government evaluation would have shown, something over which the Defendant had no control because he could not force the Government to conduct such an independent evaluation?

1

### STATEMENT OF THE COURSE OF PROCEEDINGS
### AND DISPOSITION OF THE CASE

Petitioner-Appellant Williams Emmett LeCroy, Jr. (hereinafter referred to as the "Defendant" or "Mr. LeCroy") was tried before a jury on an Indictment charging carjacking, where the victim, Joanne Lee Teisler, was killed. He was convicted and sentenced to death. This Court denied his direct appeal, United States v. LeCroy, 441 F.3d 914 (11th Cir. 2006), and the Supreme Court denied his petition for a writ of certiorari. United States v. LeCroy, 550 U.S. 905 (2007).

After the conclusion of his direct appeal, Mr. LeCroy filed his Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody Pursuant to 28 U.S.C. §2255, raising among other issues the ineffectiveness of his counsel at sentencing.  The District Court allowed the presentation of evidence, and after briefing by the parties, the District Court denied the Defendant relief. United States v. LeCroy, 2012 WL 1114238 (N.D.Ga. May 30, 2012). The Defendant filed a timely Notice of Appeal, as well as a Motion and Memorandum for Certificate of Appealability, which was granted by the District Court as to six issues. On January 15, 2104, a panel of this Circuit entered its opinion affirming the District Court. LeCroy v. United States, ___ F.3d ___, 2014 WL 129022, C.A.11(Ga.) 2014.

## <u>STATEMENT OF FACTS NECESSARY FOR ARGUMENTS OF THE ISSUES</u>

This Court's opinion on direct appeal, <u>United States v. LeCroy</u>, 441 F.3d 914, 918-920 (11th Cir. 2006), details the evidence supporting the Defendant's guilt. Suffice it to say inferences could be drawn from this evidence to support the Government's contentions made at trial, both as to guilt/innocence and as to sentencing, that the killing of Ms. Tiesler was an unprovoked attack by a repeat offender in order to obtain a vehicle to escape from the consequences of his then probation. The defense never contended that Mr. LeCroy did not assault and kill Ms. Tiesler. They could not given the physical evidence found at the crime scene and at the time of Mr. LeCroy's arrest, as well as Mr. LeCroy's admissions to the crime.

However, the pretrial mitigation investigation revealed not only a substantial history of physical and emotional abuse by the family, but also incidents of bizarre sexual behavior and sexual abuse. The most important incident of sexual abuse was an incident when Mr. LeCroy was only 8 years old and was sexually abused by a babysitter, who he knew only as "Tinkerbell." It was believed by the defense that sexual abuse, combined with the other abuses that the Defendant had suffered as a child, would constitute a mental health mitigation defense at sentencing.

Indeed, Mr. LeCroy reported to the defense that his attack on Ms. Tiesler was directly related to the sexual abuse he had suffered as a child. While residing with his

3

parents in the Cherry Log Mountain Community in North Georgia, he had encountered Ms. Tiesler, a nearby neighbor, on a couple of occasions and in his deluded state became convinced that she was in fact the "Tinkerbell" who had abused him as a child. He believed that he had been cursed by this abuse and that "Tinkerbell" was responsible for the troubles he had encountered throughout his life and would continue in the future. He became obsessed with Ms. Tiesler, who he believed to be "Tinkerbell," and believed somehow that he could force her to remove the spell that she had over him if he confronted her and made her lift this curse. As a consequence, he broke into her house, laid in wait for her and confronted her about the sexual abuse. When she refused to acknowledge that she was in fact "Tinkerbell" and refused to lift the spell he believed that she had cast upon him, he attacked and abused her, thinking that this would cause her to lift the spell. He then panicked and fled the scene in Ms. Tiesler's car, taking some of her clothing in hopes that they could be used in lifting the spell. He only realized later that Ms. Tiesler was not "Tinkerbell," when he learned she had Christian CD's in her car. Ashamed about what he had done he wrote a note asking to be forgiven for her murder, which was found in the car after his arrest.

Having heard this explanation for what had happened and having reviewed the records of Mr. LeCroy's reports while he was incarcerated of sexual abuse as a child the defense obviously realized the attack on Ms. Tiesler was the result of mental illness, especially as it related to childhood sexual abuse. As a consequence, they

arranged for Mr. LeCroy to be evaluated by Dr. Michael Hilton, a well-respected forensic psychiatrist in Atlanta. Dr. Hilton was provided the prison records that had previously been amassed with respect to Mr. LeCroy's reports of sexual abuse, as well as other records regarding his family history, including information regarding physical and emotional abuse as a child. Dr. Hilton also interviewed Mr. LeCroy personally.

Dr. Hilton reached a diagnosis which attributed the attack on Ms. Tiesler to various mental disorders of the Defendant, including "borderline personality disorder" and "schizotypal personality disorder," which often leads to "paranoid schizophrenia" and may include "transient psychotic episodes or near psychotic episodes." Dr. Hilton provided the defense with reports of his conclusions, but none of the defense attorneys ever met with Dr. Hilton to discuss with him his findings. Dr. Hilton had concluded that "but for the mental illnesses" that he diagnosed, Mr. LeCroy would never have committed the attack on Ms. Tiesler, important mitigation evidence. In short, the murder of Ms. Tiesler was "the product of (Mr. LeCroy's) mental illnesses."

As trial counsel testified in the proceedings below, the primary reason why the defense did not call Dr. Hilton or another doctor who was available, Dr. David Lisak, known to be one of the leading experts in the country concerning the effects on an adult of childhood sexual abuse, was because they knew that to call either expert would trigger the Government's right to its own independent evaluation of Mr. LeCroy. They simply did not trust the types of experts that the Government typically retained for an

5

independent Government evaluation. As a consequence, the decision not to present any expert evidence tying the Defendant's crimes to mental illness, as these experts would have done, was made without knowing the full consequences of that decision. They simply did not know what a Government evaluation would prove. As trial counsel Stephanie Kearns testified, she was "very fearful" of a Government evaluation and this is why she "didn't want Bill LeCroy examined by the government psychiatrist." Similarly, trial counsel Brian Mendelsohn testified that he did not want Mr. LeCroy evaluated by a Government psychiatrist because he was "very scared" of a Government evaluation and did not "have a lot of faith that the government experts would be coming out trying to help Mr. LeCroy."

This decision to forego mental health evidence because of a fear of what a Government evaluation may reveal, without knowing what that evaluation would be, was made despite the fact that Rule 12.2(c) of the Federal Rules of Criminal Procedure protects the defense in this situation. The defense would not have to make a decision as to whether to present their expert testimony until they were informed of the specifics of a Government evaluation. If it had been damaging, then a reasonable and informed decision might have been made. If it had supported a defense evaluation, a decision to forego mental health evidence in that situation would have been clearly unreasonable. But, despite the protections of Rule 12.2(c) the decision was made to abandon mental health evidence, the only evidence which would have given the jury a mitigating

6

explanation of how the Defendant came to commit the crime for which he was charged, without sufficient knowledge of the consequences of that decision.

## ARGUMENT AND AUTHORITIES

Claims of ineffective assistance of counsel are governed by the familiar two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984). In order to obtain relief for ineffective assistance of counsel a defendant must establish (1) "that counsel's performance was deficient" in that it "fell below the objective standards of reasonableness," under "prevailing professional norms," Id. at 687-688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

In determining whether counsel's performance fell below professional norms, a strategic decision made with full knowledge of the consequences of the decision which is then actually implemented by counsel, is unchallengeable, if the decision is at least a reasonable choice. But an uninformed strategic decision is not due deference. Strickland v. Washington, 466 U.S. at 690-691 (1984)("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation."); Baxter v. Thomas, 45 F.3d 1501, 1514 (1995)("[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the

7

attorney has failed to investigate his options and make a reasonable choice between them.") (citing and quoting Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991)).

Here, trial counsel did their job in conducting an extensive investigation of the Defendant's background. They had uncovered evidence of Mr. LeCroy's chaotic, dysfunctional and abusive, both physically and emotionally, childhood, as well as evidence of sexual abuse as a child, including Mr. LeCroy's reports to mental health professionals while he was incarcerated long before the crime charged that he had been sexually abused by a female babysitter.

Based on this information, counsel caused the Defendant to be evaluated by a well-respected forensic local psychiatrist, Dr. Michael Hilton, who provided an extensive report describing mental illnesses, including borderline personality disorder and schizotypal personality disorder, which in Dr. Hilton's opinion offered an explanation as to how Mr. LeCroy could have come to commit the crime for which he was obviously guilty. These disorders include "magical" thinking, "transient psychotic episodes," and features similar to "paranoid schizophrenia," which might cause Mr. LeCroy to conclude in his confused and deluded state that Ms. Tiesler was in fact the babysitter that had molested him as a child and who had cast a spell upon him which was the cause of all of his troubles as an adult, which only she could remove. In Dr. Hilton's opinion the Defendant's crime was the direct product of the mental illnesses he had diagnosed. The crime would not have occurred but for mental illness.

Counsel understood that this type of evidence could form a compelling case which could convince at least one juror, all that was necessary, that a sentence of life without parole, rather than a sentence of death, would be an appropriate sentence. 18 U.S.C. §3593(e). As Justice O'Connor observed in California v. Brown, 479 U.S. 538, 545 (1987), such mitigation evidence is relevant "because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional or mental problems, may be less culpable than those who have no such excuse." (Emphasis added).

Counsel, however, unreasonably abandoned this compelling mental health case in mitigation primarily because they were fearful from their past experience that a Government evaluation would not have been helpful. While a Government evaluation may or may not have been harmful, there was no way for any of the trial counsel to know for sure until an evaluation actually occurred. If the evaluation by a Government mental health expert had been so persuasive and damning that it trumped any expert testimony by defense experts, then an informed decision might reasonably be made not to pursue mental health evidence through an expert. The Defendant would have been no worse off than he ultimately was. But to make this decision in a vacuum without even knowing what the results of a Government evaluation would be, is just the type of uninformed strategic decision to which courts should give no deference. Sears v. Upton, __ U.S. __, 130 S.Ct. 3259, 3265 (2010)("That a theory might be reasonable, in

the abstract, does not obviate the need to analyze whether counsel's failure to conduct an adequate investigation before arriving at this particular theory prejudiced Sears."); Jackson v. Herring, 42 F.3d 1368 ("[A] legal decision to forego a mitigation presentation cannot be reasonable if it is unsupported by sufficient investigation."); Bond v. Beard, 539 F.3d 256, 289 (3rd Cir. 2008)("Strategy is the result of planning informed by investigation, not guesswork.").

After all, Rule 12.2(c) of the Federal Rules of Criminal Procedure grants a capital defendant the right to review a government evaluation before making a final decision as to presenting expert mental health testimony at sentencing and Rule 12.2 (c) (4) specifically protects a capital defendant from any statement made during the government evaluation, any testimony of an expert based on any statement, and any "other fruits of the statement" from being admitted into evidence unless the defendant decides to introduce expert evidence at sentencing in a capital case.  See, e.g., United States v. O'Reilly, 2010 WL 653188*5 (E.D. Mich.). And in this context the "once burnt, twice shy" excuse, because of a prior bad experience with a government evaluation, is "simply not good enough," when without even knowing what the government evaluation would show in this case counsel abandoned mental health evidence and as a consequence effectively doomed any mitigation case connected to the actual crime.  Johnson v. United States, 860 F.Supp.2d 663, 886 (N.D.Iowa, 2012).

However, the Panel in its Opinion affirming the District Court's denial of relief,

10

makes two extraordinary claims regarding the Defendant's contentions. First, the Panel Opinion concludes that "LeCroy certainly offers no reason to think that the lawyers' judgment was unreasonable" in abandoning a mental health defense for fear of a Government evaluation without knowing what that evaluation would be and despite the protections of Rule 12.2(c). (Panel Opinion, p. 49). Is this Court prepared to conclude that it is reasonable for counsel to forego a compelling mental health defense, one that specifically connects the crime to mental illness, just because counsel had bad experiences with other cases and the Government evaluation "might" be unhelpful? The Panel cites no case law in support of its claim, which is not surprising since it is contrary to the consistent teaching of Strickland and subsequent cases that uninformed critical strategic decisions, especially one that essentially guts the mitigation case, are not reasonable.

But the even more extraordinary claim by the Panel is its conclusion that LeCroy's claims must fail because he did not prove what a Government evaluation would have shown, asserting that it was the defense's burden to prove that a Government evaluation would have been favorable. (Panel Opinion, p. 49). What is so disturbing about this claim is that there is no way that the defense could force the Government to conduct its own evaluation. Can the Government simply respond to claims of ineffective assistance of counsel when counsel abandoned a mental health mitigation case because from past experience they were fearful of a Government

11

evaluation by claiming that the defense has failed to prove what a Government evaluation would be, even though only the Government could cause an evaluation to occur. Instead, if this was to be the dispositive fact, then it was incumbent upon the Government to cause its own independent evaluation to occur. If the Panel is correct, then whenever a claim is made that trial counsel's actions were unreasonable in abandoning a compelling mental health case for fear of Government evaluation, despite Rule 12.2(c), the Government can merely trump any such claim by simply refusing to conduct its own independent evaluation, something the defense cannot force the Government to perform, and then argue that the defendant has failed to prove his case. Such a Catch 22, which is key to the Panel decision, requires en banc review.

In short, unless en banc review is granted, then the law in this Circuit is that it is reasonable for trial counsel in a death penalty case to eliminate from its mitigation presentation mental health evidence that directly connects the crime to mental illness simply because counsel had bad experiences with Government evaluations in the past and without knowing whether a Government evaluation would have been favorable or unfavorable, especially in light of the protections of Rule 12.2(c). Second, and equally important, unless en banc review is allowed, then the law in this Circuit will be that when a claim is made that expert mental health evidence was abandoned for fear of a Government evaluation, no matter how compelling the mental health evidence might be, any ineffective assistance of counsel claim is doomed because the defense cannot

force the Government to conduct its own independent evaluation to determine what the evaluation would have been. The Government should not hold the trump card by simply refusing to cause an independent evaluation to occur, as here. These two troubling conclusions by the Panel of significant importance to death penalty litigation need to be revisited by the Court en banc and en banc review should be granted.

## CONCLUSION

Based on the factual and legal contentions herein, the Defendant respectfully requests that the Court grant rehearing en banc in this case.

This 4th day of February, 2014.

Respectfully submitted,
s/John R. Martin
John R. Martin
MARTIN BROTHERS, P.C.
202 The Grant Building
44 Broad St., N.W.
Atlanta, GA  30303
(404) 522-0400
jack@martinbroslaw.com

s/Sandra Michaels
Sandra Michaels
202 The Grant Building
44 Broad St., N.W.
Atlanta, GA  30303
(404) 522-0400
slmichaels@mindspring.com
**ATTORNEYS FOR
APPELLANT LECROY**

13

## CERTIFICATE OF SERVICE

This is to certify that I have this day served Assistant United States Attorney William McKinnon, United States Attorney's Office, 600 Richard Russell Federal Building, 75 Spring Street, N.W., Atlanta, Georgia 30303 with a copy of the within and foregoing **Petition for Rehearing En Banc** by e-mail via the CM/ECF system.

This 4th day of February, 2014.

s/John R. Martin
John R. Martin